Our next case this morning is 412-0057 Rowe Construction v. Town of Normal for the appellant, Daniel Wright and James Bruner. Is that pronounced correctly, sir? Are both of you going to argue? And for the appellee, Stephen Mart? Is that pronounced correctly? That is correct. Mr. Wright, you may proceed. May it please the Court. Counsel. Counsel. This matter arises from initially a bid call that was published by the Town of Normal in October of 2011 regarding the 2011 motor fuel tax resurfacing project in the Town of Normal. A little bit of background factually, and to the extent the Court is already familiar with this, I would be glad to dispense with it, but just for background purposes, after the bid call was made, Normal conducted a pre-bid conference in October of 2011, which was attended by representatives of the Courts of Normal and the two bidders, H.J. Eppel and Company, who is one of the appellees in this matter, and Rowe Construction, the appellant. As the Court knows, H.J. Eppel was ultimately the successful bidder. Their bid was approximately $12,000 lower than the approximately $850,000 bid submitted by Rowe. The nature of the pre-bid meeting was a discussion of various changes to the project that expanded the scope of work and the costs on the project. Specifically, one example is that there were 122 driveway approaches that were discussed at the meeting, and the expansion of the work in respect to those driveways was the removal and placement of asphalt by handwork, so not by the typical rotomill machine that just goes down the street. This would be additional work, additional costs, additional manpower, which was fine, of course, and that was part of the substance of the pre-bid meeting. And that was formalized in the document that the Town of Normal called and labeled such as Addendum No. 1. And at the bottom of Addendum No. 1, in bold writing, it said, this shall be returned with the bid documents. It went further than that and said, this shall be included in the contract. And the first issue on appeal is whether that created a condition proceeding such that failure to submit that didn't comply with the terms of Normal's offer and resulted in a material variance in Apple's bid such that it must be rejected. At the trial court, Normal admitted that the purpose of requiring bidders to submit these pre-bid meeting minutes as Addendum No. 1 is to ensure that any changes made at the pre-bid meeting are acknowledged, and consistent with that purpose, Roe submitted Addendum No. 1 with its bid in compliance with the condition proceeding established by Normal on the face of the document. But despite the material variance in Apple's bid in not submitting Addendum No. 1, the Town Manager denied Roe's bid protest and the matter proceeded on to the Town Council where the contract was awarded to Apple. So just very briefly, covering the two issues on appeal, I alluded to one before. The first issue is whether Apple's failure to submit Addendum No. 1 constituted a material variance from the bid requirements because it afforded Apple, under the case law, specifically the Walsh case, because it afforded Apple the ability, not the actual receipt of a benefit, but the ability to later exercise a substantial benefit enjoyed by Roe. Is that what happened here? Judge, that is what happened here. So they changed the bid? Our position is that as a matter of law, the acceptance or the bid submitted by Apple did not meet the terms of Normal's offer. That wasn't my question. Sorry, Judge. Would you ask again? If I understand, my question was, did Apple change its ultimate bid based upon the failure to include Addendum No. 1, which was, if I understood correctly, your concern that they could do? I understand your question. I appreciate the clarification. Under the Walsh case? Well, how about beginning with answering? Absolutely. Did they change their bid? Absolutely. Say yes or no, and then give me the explanation. No. Apple has not. They've commenced performance of the work, and they continue as we sit here today, or as I stand here. Okay. However, as a matter of law under the Walsh case and others, the determination of whether that's a material variance and whether they have the ability to later walk away from a bid is not determined at any point later on in the project. It's determined at the time the bids are open. So at the time the bids are open, the legal standard is that the court must determine whether there was a material variance that afforded Apple a benefit not enjoyed by other parties. And the benefit would be one to be derived, in this instance at least, later if it were to choose to default or not do what the town thinks it's supposed to do, and there might be future litigation. Right. That's the benefit? The benefit is that if, as stated in the Walsh case, if anything prompted it to do so, that it could walk away from the project, walk away from the contract on the grounds that it submitted a nonconforming bid, and it would remain unbound to its bid. You mean they could walk away on the grounds that they didn't comply to begin with? Is that your position? That the failure to... Apple could say, gee, we're not going to do this anymore, and by the way, we don't have a contract because we didn't comply with your contract? Under the standard... Provision? That's correct. By further explanation, under the standard articulated in Walsh, that scenario would leave Apple unbound to its bid, and enjoy the benefit of later being able to take the position that no contract had ever been formed because they didn't comply with the bid requirements. So under that precedent, our position is that that directly applies to this matter, because a condition proceeding was established by the issuance of addendum number one, which expressly said this shall be included in the contract and shall be submitted. Apple didn't do that, and as a consequence, they failed to comply with the condition proceeding. Their acceptance did not meet the terms of NORML's offer, and therefore was not responsive. It constitutes a material variance, which cannot be waived by the town of NORML. And I don't know the extent to which the court wishes me to address the standard of review, but we set out in our brief that our position is that this is subject to a de novo standard of review. The court heard evidence on this, evaluated the testimony of witnesses and the findings thereon, and it's still de novo? Well, the issue raised on appeal does not pertain to the evidence heard by the court. So the evidence had no role in any of this? The evidence heard by the court pertained to the substance of addendum number one and whether that actually changed the scope of the project. And we're not raising that issue on appeal. So the issues on appeal strictly pertain to the language of addendum number one. So we should disregard the testimony that was presented? We're asking the court not to consider that because it's not relevant to the issues on appeal. I try to frame my questions carefully. I'm sorry. Should we disregard the testimony that was presented? Yes. Okay. Go ahead. The disputed testimony. The undisputed facts, I think, are subject to the court's consideration. So you're clarifying it. We should disregard the undisputed testimony but consider the disputed one? I'm not sure how your clarification there works. I understand, Judge. Frankly, the only undisputed fact that we're asking the court to consider, well, there are only two undisputed facts that are set forth in our brief. The language of the addendum, there's no dispute in respect to that. I think that's a matter of the court's construction of that. And the fact that nobody disagrees that EPIL did not submit addendum number one. And those are the only two issues of law that are raised on appeal as to the first issue raised for review. And the other testimony that was disputed in the trial court shouldn't be considered on appeal because it's not relevant to an issue raised on appeal. The second issue raised on appeal is subject to the abuse of discretion standard, and that is whether the trial court abused its discretion by failing to find that the town of Normal's conduct following the opening of the bid constituted unfair dealing and favoritism. As the court knows, the municipal entity possesses discretion to waive any minor variances. Part of the dispute here is whether this variance was minor or material, and that's really relevant to the first issue raised on appeal. But even if the court found that this was just a minor variance, the town of Normal would have discretion to waive that. However, if the court found that there was unfair dealing or favoritism after the opening of the bids, that would deprive Normal of that discretion. And our position is that there was, in the aggregate, the town of Normal's conduct after the bid opening did constitute unfair dealing. Is that to be reviewed de novo too? No, Judge, that is subject to the abuse of discretion standard. I don't think there's any argument. We haven't raised any in our brief, and I don't believe there's any valid argument that that would, because that would clearly be facts and evidence reviewed by the trial court. And the court was presented with evidence on this subject? Yes. When did it go wrong in deciding that there was no problem? Would you like me to discuss the specific matter? Well, just go ahead. Judge, it went wrong in that there were specific instances, and frankly there was nothing direct, there was no email that says, we really hope that Epple gets this contract, or we don't like Roe and we're not going to give this to them. So that would be direct evidence of unfair dealing or favoritism. But our position is that in the aggregate, the circumstantial evidence of unfair dealing and favoritism is compelling, and that the court should have found that there was sufficient unfair dealing and favoritism, that there was unfair dealing and favoritism such that Normal didn't have the discretion to waive. What was the evidence of the unfair dealing and favoritism? Thank you, Judge. The evidence of the unfair dealing, primarily, the first example is that after the bid opening, when Normal realized that Epple had not submitted addendum number one, their town engineer reached out directly to Epple and solicited confirmation that they received the addendum, that they acknowledged it, they accepted it. So trying to correct the bid variance, effectively. What should they have done? Well, in my judgment, they shouldn't have done anything. They should have allowed the process to take its course and the town council could determine whether the bid variance was, rather than taking measures to aid Epple in explaining its bid variance, or, as I said, the key point is the moment... So they were insufficiently bureaucratic, is that the story here, as opposed to exercising judgment and figuring out, was this an oversight and did it matter? Well, the processes for public bidding are very strict, and that benefits the public, it benefits all the contractors, and it benefits the municipality. As I mentioned, the relevant time for determining whether a bid variance is material is the time at which the bids are open, and any action taken after that to cure that is improper under the case law. That's our position then. Whether it was nice of them or wise under the case law, that's after the time the bids were open. How much lower was Epple's bid than Roone's? It was $12,000 lower. Well, why wouldn't it be appropriate to say, gee, we can save $12,000 here to go with the lower bidder, but they had this problem, and reach out to them and find out whether that was an oversight and whether it mattered. Whether it was an oversight or not, if it's a material variance, it's improper and should result in rejection of the bid, regardless of whether... And they chose bias and unfairness to have made that inquiry by the engineer? Judge, our position, and this is not the only example, but the first example, that in the aggregate all of these things suggest that the Town of Normals' motivation was to award the contract to anybody other than Roe because of the increase in competition. Roe has been the primary contractor on these projects for many, many years and the circumstantial evidence, I think, is extremely compelling. The true motivation here was to get this contract into someone else's hands than Epple. So the second example of that is that, for example, in the town council meeting there was an emphasis on, and this is during the discussion of this bid variance and whether it was appropriate to award the contract to Epple. One of the grounds for doing that was an increase in competition. And emails between, and these are set forth in our brief, emails between the town engineer and a contact at IDOT, which is the entity that distributes the motor fuel tax funding that funded about half of this project. And in that, the town manager talks about the issue of competition. And it's a running theme throughout this case. Competition against Roe in favor of someone else, which has no place in the public bidding process. Speaking of communication with IDOT, the town engineer, after the bid opening and before the contract was awarded, solicited an opinion from IDOT, from a contact at IDOT, about whether this was a material variance and what's IDOT's perspective on this. Is that a bad thing to do? That is not a bad thing to do. I don't think there's anything wrong with seeking input from the funding entity. What was it told? Thank you, Judge. The response from IDOT was, if it was for a state-like contract, Epple's bid would have been declared ineligible, and failure to submit a required addendum is not a minor omission or technicality. If the pre-bid meeting didn't matter, or the minutes were not important, it should not have been required to be included as an addendum. Again, this is an opinion from IDOT, the agency which controls approximately half of the funding on this project. Is it an opinion from IDOT? Or is it the opinion of the person? Does that person speak for IDOT on this? Judge, I will say it wasn't an opinion from IDOT's legal counsel or from the director of the Department of Transportation. It was from a gentleman out of the IDOT regional office that controls funding for this region. So it was someone that the town engineer thought would be a person of authority on this issue, such that he sought his opinion. So what did the engineer do with that opinion? Initially, let me preface that by saying there's a town action report that's provided to the city council before each meeting to provide information about action items at the town council meeting. And staff prepares, so we've learned, staff prepares a preliminary report that's circulated around the office and I understand is ultimately approved by the town manager. Well, the initial draft of that for the November 7th council meeting included this opinion from IDOT. However, the final draft did not include that opinion. It had been removed in our judgment for the purpose of actively concealing that opinion from the town council. They didn't know about it, it wasn't discussed, and it's because it was inconsistent with staff's recommendation that EPPL get the project. Another example of unfair dealing. Well, except that staff would have been the people who provided the information to put in the first report. So who's the staff? Do you really mean that the town manager must have suggested that this be revised? Yes, Judge, what I'm suggesting is that the initial draft was prepared by someone below the town manager. By staff? Yes, by staff, and that ultimately the town manager, Mr. Peterson, he didn't say at trial that he couldn't remember. Ultimately, in our judgment, he directed that it be removed. But again, that's circumstantial. What we know is that it was there in the preliminary draft. It wasn't in the final draft. The council didn't know about it. And we didn't know about, frankly, any of this until after the town council meeting we engaged in discovery in this case. And the final issue that's... What did Judge Krasovsky say about all this? What was his conclusion? In respect to unfair dealing and favoritism, I do not believe that was directly addressed in the court's order. The central sentence from the court's order, which was from the bench and was in the transcript, was that the... I'm paraphrasing here... The issue is whether EPPL received a benefit by not submitting Avenum No. 1. And I think his words were, I don't think that they did. And part of our argument on appeal is that the correct legal standard was not whether they actually received a benefit at the time, but that, as we discussed, that they had the benefit... Or that they could later have exercised the benefit as articulated in the Walsh case. Very briefly, the last point on the issue of unfair dealing and favoritism. On the stand at trial, the town manager testified that there were specific local procedures in the town of Normal for the termination of a bid protest. And that that procedure was first reviewed by the town manager, and that ultimately it would be resolved by the town council. Well, in this matter, that procedure wasn't followed. The town manager resolved the issue himself, did a written decision denying the bid protest, and resolved the bid protest in that manner, inconsistent with the local procedures. So, in the aggregate, all of those facts, as I mentioned, are compelling evidence that there was unfair dealing and favoritism in favor of EPPL and against Roe. And that's the manner in which, on that issue, our position is that the trial court uses discretion on that issue. Thank you. Thank you, counsel. Mr. Burke? Thank you, Your Honor. May it please the Court? Counsel? Counsel. Your Honor, the facts in this case aren't really disputed. I think the standard review is the clear abuse of discretion standard for all portions of this case. As the Court indicated, there was an abundant amount of testimony presented in the trial court, two or three days of testimony, and considerable questions of fact and evidence was presented. So I think the burden is on the plaintiff to show that the trial court abused its discretion in denying the petition for preliminary injunction in this case. There was no unfair advantage given to EPPL. Both parties attended the pre-bid meeting that was advertised and announced ahead of the bid invitation by the town staff. And the pre-bid meeting did not result in any change in the plans, didn't result in any change in quantity, didn't result in any change in the scope of the work. It was explained to the parties at the pre-bid meeting that there were some 120 driveways, possibly as many as 20 of these driveways, according to the town engineer, might need some adjustment as you go by with the resurfacing equipment. You need to match up the elevations and the grades and provide a smooth transition into the driveway. The town engineer indicated that there might be 20 that would need some additional work, that we'd have to get out of the machinery and actually go over there and make that adjustment. The purpose of the pre-bid meeting was to inform the bidders that they would not be paid additional amounts for this work, so that work would have to be included in the price that they quoted on other work within the project. The engineer estimated that there would be approximately 10 tons of material that might be needed for this extra work, and that the plans already had a buffer or a cushion of 100 tons of material. So there was plenty of material in the announced bid call to cover whatever this explanation of this incidental work was required. Both parties were at the pre-bid meeting. Both parties heard that explanation. Now, I raised this in the trial court, and it may be appropriate for this court to consider as well, but I think there's a serious question as to whether or not the invitation to bid was officially amended, so that the pre-bid meeting minutes became part of the invitation to bid. The invitation to bid was joint exhibit number 5, and that joint exhibit listed on page 2, the specific documents that must be returned with the bid. And nowhere on there does it say pre-bid meeting minutes. Nowhere does it say addenda must be returned with the bid. Every document that must be returned with the bid, add with it in a box at the top of the document, return with the bid. That was the official invitation to bid that was published by the town, and that the parties received. So I think there's a serious question whether or not the addendum, what we call addendum number 1, pre-bid meeting minutes, was ever officially added to the invitation to bid. For this reason alone, it would be appropriate to sustain the trial court's decision. Addressing the addendum, the pre-bid meeting minutes went out in an email to the two contractors, Roe and Apple. And at the bottom of the email, there was in big bold print, please confirm receipt of the minutes of this email. Neither Roe nor Apple replied to this email, although it was in large print. In smaller print, it says the minutes and sign-in sheet are titled addendum 1 and need to be returned with the bid documents. That was the only instruction given in this case with regard to returning the pre-bid meeting minutes. I suggest that that's not sufficient to modify or appropriately amend the invitation to bid. Did the testimony establish why that request was even made? I think it was routine. I think the engineer in charge of the project routinely asked, or made the minutes an addendum, or called it an addendum. The town engineer, Mr. Brown, testified that in many cases, a pre-bid meeting will result in a change in the plans. They'll issue a separate plan sheet. They'll issue a change in quantity that formally amends the invitation to bid, or the scope of the work. And that didn't occur in this case. So I think it was just a matter of routine by the staff person who was in charge of this particular project. I'd also point out to the court that there are no Illinois cases specifically on point. All of the cases cited by the appellant in this case had to do with submission of subcontractor lists. That is substantially different than pre-bid meeting minutes. Pre-bid meeting minutes are simply a written document saying what was discussed at the pre-bid meeting. Whereas the cases cited oftentimes had to do with minority participation by minority contractors. For instance, in the Walsh case, it was stated eight different places that failure to provide the minority subcontractor list would result in the bid being deemed non-responsive. We don't have that kind of direction in this case. At the pre-bid meeting minutes in Walsh, there is oral instruction to the bidders. Be sure to return your minority subcontractor list or your bid will be non-responsive. I understand that argument in Walsh that that's what they said. But what's not clear to me is why in Walsh was that deemed so important? Why did they put that requirement in? Well, I don't know the funding source with Walsh. I don't know particularly why that was there. But that was the awarding authority's choice to mandate that requirement. We don't have that mandate here. It may have been a requirement of law as a result of the funding source. Is it your position that Roe was guilty of the same malfeasance that Epple was in this very case? Roe did not acknowledge receipt of the addendum. But they returned it? Was there any difference in these two requirements, both to acknowledge receipt and return it? I don't think there was any difference. So what I want to know is the very argument Mr. Wright is making in this case about lack of compliance, one that would apply to Roe as well in your opinion? It would because they did not acknowledge receipt of the addendum as was required apparently by the email. Go ahead. In Rosetti, again the contractors failed to comply with a minority labor goal. And in that case the requirement was a requirement of law as part of the Chicago plan. Again, there was specific instruction that the bid would be non-responsive if it wasn't returned. And there was oral direction given to that at the pre-bid meeting. In the other cases, Kennedy for instance, the bidder forgot to sign the execution page. So in that case there was no binding contract form as found by the court. We don't think that Apple could walk. First of all, I don't think Apple received any kind of benefit or advantage in this process. Nor was Roe disadvantaged. They both received the same direction, the same information. Now whether or not Apple could walk from the contract and say we're the low bidder, we got the contract, we've decided we don't want to do the work because we didn't return our pre-bid meeting minutes. I don't think that's the case. So you think this would be a binding contract against Apple keeping them in even if they tried to walk away as Mr. Wright suggested? Yes, for two reasons. One is I'm not sure that the requirement to return pre-bid meeting minutes was part of the official invitation to bid. And second, Illinois Administrative Code, which applies in this case because motor fuel tax monies are involved. 44 Part 6, 6.200. This administrative rule indicates that the written minutes of the pre-bid meeting conference shall be binding. So it's our position that that's part of the background law of this case. That the pre-bid meeting minutes, when there's a mandatory pre-bid conference as there was in this case, that when the discussions are reduced to writing, those discussions then become binding on the parties. And so Apple could not walk from this contract. With regard to the post-bid situation or the allegation of unfair conduct towards Roe after the bid was open, I would simply say that Roe immediately filed a protest with IDOT. And IDOT in a written letter, which is part of the record, rejected or returned the protest and said that they had no authority to decide the protest, that this was a matter for the local awarding agency, and that the town of Normal should determine whether or not Roe's protest is valid. And in response to that, the city manager wrote a written opinion and denied Roe's request. He attached that opinion to the council packet, the information that went to the town council and the mayor. And Roe appeared at the council meeting and there was considerable discussion regarding the bid protest. Roe's representative was there. Roe's representative argued the case in front of the town council. And the town council, in a 4-2 vote, rejected Roe's protest and awarded the contract to Apple. So I don't think that that can be considered evidence of unfair dealing. Roe had an opportunity to present the case and argue whatever it cared to argue in front of the Normal town council and the council heard that evidence and in a divided vote decided against their protest and awarded the contract to Apple. So we think that the record in this case does not show the type of unfair dealing or favoritism that would justify setting aside the trial court's decision. We don't think that there was a clear abuse of authority by the trial court. There was no unfair advantage given to Apple or to Roe. No disadvantage on Roe. And we think the trial court's decision should be sustained. Thank you, counsel. Mr. Wright, any rebuttals, sir? Just briefly addressing some of the points raised by counsel for Normal. First, the issue of whether the invitation to bid was formally amended. Normal issued a document titled Addendum No. 1 and it had to addend something. And that was the bid requirements subject to the project. And the issue of the email, the email was not the document that amended the bid requirements. The email transmitted the document which was Addendum No. 1. So we're not concerned with the email. There's no question that the email requested that the parties acknowledge that they received it. We're not saying that that was a requirement under the contract such that if you didn't acknowledge the email, you had committed a material variance. The document that added to the contract the bidding requirements was Addendum No. 1 and that was attached. Where's the requirement that says it has to be returned? Wasn't that in the same email? Which also said we need your acknowledgement and after you've acknowledged it, return it. The email said ask the parties to acknowledge receipt of the email. And it probably said to return it with the bid. But the document that we're concerned with, the email didn't purport to amend anything. The email didn't purport to amend the bidding requirements. The addendum, by virtue of the fact that it was purported to be an addendum and said this shall be included in the contract, the email didn't say this shall be included in the contract or create a condition proceeding to the acceptance of the offer. So the email frankly in our judgment is irrelevant to the central issue, which is what was the effect of the actual addendum itself? I'm still puzzled with regards to the answer to Justice Feigin's question. Isn't it the email that says acknowledge and return? The email says acknowledge and return. If you fail to acknowledge it but return it, you've only done one of those two things. That's an accurate statement. Well, how is that any different than your competitor? Judge, the difference is that a document that is characterized by normal as an addendum and says that this addendum shall be returned and it shall be included in the contract. As a matter of law, our position is that that creates a condition proceeding. That's not just a mere request that this should be acknowledged and returned as the email suggested. But this is a formal document which amends the bidding documents. If you don't acknowledge it, you haven't done what you were asked to do. How does that make any difference? What if there are no minutes? What if there's no addendum but there are minutes? Are the parties bound by what happened at the pre-bid conference? With or without the formality of calling something an addendum? I think if that is incorporated into the contract at some point, and they attended and accepted the terms there, then they would be bound by it. What if they attended and accepted the terms at the pre-bid meeting? At the pre-bid meeting they say, yeah, it's okay with us. I'm assuming at this pre-bid meeting there was the explanation that you're not going to need any extra material, guys, but you've got to take care of these drivers. I think there was a discussion and explanation and discourse between the parties at the pre-bid meeting. Judge, I understand your question. The difference here is that NORML created an addendum and made it condition-proceeded. That is a distinction from the scenario that your honors described. But I would agree with you that if there had been no addendum, then we wouldn't have this issue about whether there was a condition-proceeded created and who complied and who didn't comply with that condition. But with the discussion at the pre-bid meeting, would they be held to that? Would the parties be held to it? I believe if that was incorporated into the contract and they accepted that as part of the submission of their bid, then I believe they would be held to it. But the terms offered by the town were modified by this issuance of an addendum. When they expressly said, this must be returned, it shall be included in the contract. By not submitting it with the bid, that was proposing a counteroffer inconsistent with the terms of the offer. Thank you, counsel. We'll take this matter into advisement and be in recess for a few moments.